## In re MONARCH CORPORATION.

### (District Court, D. Connecticut. May 15, 1912.)

### No. 1,985.

1. BANKRUPTCY (§ 219*)—COURTS—JURISDICTION—STOCKHOLDERS.

In bankruptcy proceedings against a corporation, the relation of foreign stockholders to the corporation is such that the court had jurisdiction to determine as against them whether their stock was fully paid, and therefore not subject to assessment for the benefit of creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 356; Dec. Dig. § 219.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

2. CORPORATIONS (§ 232*)—ORGANIZATION—STOCK—EXCHANGE FOR PROPERTY.

Where a large portion of a corporation's stock was issued as full paid and nonassessable in consideration of a transfer of certain patents, and though the patents were not assigned, the corporation received an option to purchase the same which included the sole and exclusive right to manufacture and sell the apparatus covered by the patent during the term of the option, and this right was accepted by the corporation in exchange for the stock, and the patented articles made and sold in large quantities, the fact that the corporation did not, in fact, get an assignment of the patents, was no ground in the absence of fraud for holding that such stock was unpaid, and subject, therefore, to assessment for payment of corporate creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 879, 880, 883, 884, 987; Dec. Dig. § 232.*]

In the matter of the Monarch Corporation, bankrupt. On trustee's motion to accept and confirm by action the master's report concerning a stock assessment. Motion denied. Report rejected.

See, also, 177 Fed. 464.

David S. Day, of Bridgeport, Conn., for trustee.

Martin Conboy, of New York City, for stockholders.

PLATT, District Judge. Imperative official duties have necessarily delayed action herein. Many matters still press for action, and I must therefore decide this one with all possible brevity of comment.

The master's report coupled herewith speaks for itself. His conclusion is that a call and assessment of $20 per share be made on each share of stock held by the original incorporators, crediting any amount which each may have paid on his shares. The theory upon which it is attempted to sustain this call is that out of a total capitalization of half a million $475,000 was issued as full paid and nonassessable in consideration of the transfer of two patents. The patents were not assigned—that is to say, one was never touched at all—and as to the other, viz., No. 610,127, two of the incorporators, Carpenter and Hill, had obtained from the owner an option to purchase for $20,000, which option included the sole and exclusive right to manufacture and sell the apparatus covered by the patent during the term of the option. Upon the formation of the Corporation, Hill and Carpenter transferred to it all their rights under said option and license. This, the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

master says, was not the property which the directors valued at $475,-000. If the patents upon which that valuation was placed had been transferred to the Corporation, the master is of the opinion, and I agree with him, that no basis for the present demand would exist. If the patent were overvalued, the fault would be that of the directors. He finds in the circumstances that the $475,000 of capital stock has not been paid for either in cash or in property. That since the subscriptions are payable in property, and the subscribers have failed to furnish that property in the precise way it was to be delivered, the insolvency of the Corporation ipso facto makes the subscriptions payable in cash, is the logic of the master's report.

[1] This position is assailed most vigorously by Baldwin and Brush of the original incorporators, who as nonresidents at an earlier time excepted to the jurisdiction of the court, and who, without waiving their jurisdictional rights, protest against the trustee's demand from every possible view point. In short, they say that what they did was right, and, if it was not right, the way to settle that is for the trustee to bring a plenary suit in a forum which has jurisdiction. They insist upon a day in court which they think they do not get in this proceeding. I decided, long ago, that their relation to the Corporation gives this court jurisdiction over them, and have as yet found no reason for changing my mind. It does not jar my sense of justice in the least to decide a proposition of which I think I have jurisdiction, when every fact is in my possession which could be produced in some other forum. It is a matter of almost daily happening to decide questions of importance when the jurisdiction of this court is concurrent with that of another court. The other court might have done differently, but I do the best I know and let it go at that. So I am going to decide the right and wrong of the main proposition with such sense as in me lies.

[2] The real case is in a nutshell. The stock was issued as full paid in consideration of the patents referred to. It turns out that full title to the two patents was not vested in the Corporation. It is conceded that, if such title had been vested in the Corporation, there would be no substantial basis for the present motion. But it appears that the sole and exclusive right to make the articles which the patents monopolized was turned over to the Corporation as payment for the stock, and was accepted by the Corporation, and under such protection the patented articles were made and sold in large quantities. There is no question of fraud before the court. It is not claimed that the promoters were palming off patents known by them to be worthless. In truth, all the facts lead to the inevitable conclusion that the promoters had implicit faith in the invention. Now, the appeal here made by the trustee is addressed to a court of equity.

The trust fund theory which he invokes has no standing in any other court, but the conscience of the court is shocked when it listens to the present appeal, founded, as it is, upon the most attenuated of all technicalities. The Corporation got and used all the rights which the patents granted, but because it did not get those rights verbatim et literatim, as written in the contract, the poor stockholder must be held

up and forced to pay debts which he did not dream he was responsible for. The lack of equity in the trustee's position is intensified when it appears that the bulk of the indebtedness outstanding is due to the very stockholders who are to be mulcted by this process. It does not strike me as a case in which the directors took property of less value than the corporation expected to get. They took the property relied upon, but they did not take it with the formalities and particularities which would have been exercised if they had been more careful and painstaking.

My conclusion on this point of the controversy takes the kernel out of the whole dispute, and leaves only an empty shell. It would be academic to waste the hours in discussing other points of difference between the parties.

The motion of the trustee must be overruled and the report of the master rejected.